IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:07-CR-44 |
| ) | |
| ROBERT J. CANTRELL, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on: (1) Defendant's Rule 29 Motion, orally moved for on June 5, 2008; and (2) Defendant's Rule 33 Motion for a New Trial, filed on October 27, 2008. For the reasons set forth below, these motions are **DENIED**.

Accordingly, the Defendant is adjudged guilty of the offenses charged in Counts 1 through 11 of the indictment.[1] A sentencing hearing shall take place on February 19, 2009, at 10 a.m.

BACKGROUND

Defendant, Robert J. Cantrell, was charged in an eleven count indictment. Counts One through Four alleged mail fraud and wire fraud, in violation of Title 18 U.S.C. sections 1341 and 1346. The

---

[1]After the jury returned its verdict, the clerk was directed to record the verdict without entering judgment until the pending Rule 29 motion was resolved.

underlying fraud was a failure to disclose a potential conflict of interest while serving as a public servant in the North Township Trustee's office. Counts Five through Seven charged Defendant with insurance fraud, in violation of Title 18 U.S.C. section 1341, by fraudulently representing that his adult children were employees of Addiction and Family Care, Inc. ("AFC") in order to procure health insurance for them under AFC's group insurance plan. Counts Eight through Eleven alleged Defendant filed false income tax returns for the years 2001 through 2004, in violation of Title 26 U.S.C. section 7206(1).

On May 27, 2008, a jury trial commenced in this case. The Government introduced evidence for five days and, on June 5, the Government concluded its presentation of testimony and evidence. After the Government rested its case, the Defendant orally moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. The Defendant raised a host of arguments as to why he was entitled to judgment as a matter of law. Among those, Defendant argued that "no one ever identified Mr. Cantrell in court as the Defendant." (Gov. Ex. O, p. 3). The Court denied the Rule 29 motion in all respects, except as to the issue of whether the Government properly identified the Defendant. (DE# 62). This issue was taken under advisement. The Court directed to parties to brief the issue after reviewing the trial transcripts. At the conclusion of trial, the jury returned guilty verdicts on all

eleven counts. The parties have now had an opportunity to review the trial transcripts and have filed their respective briefs on the issue of whether the Defendant was ever properly identified.

Defendant has also filed a motion for new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Defendant asserts he is entitled to a new trial because: (1) there was insufficient evidence to support the convictions; (2) the Government presented evidence concerning the alleged absurdity of the classes offered by North Township pursuant to its contract with AFC; (3) there was insufficient evidence to support the tax fraud counts; and (4) the Government failed to disclose the grand jury transcripts of John Cantrell until after John Cantrell testified in court.

## DISCUSSION

### Facts

At no time did any witness formally identify Robert Cantrell sitting at the defense table with counsel as the person who committed the crimes charged in the indictment. Nor did the Government ask the Court to make a finding that any particular witness identified the Defendant. Despite this lack of formal identification, nine witnesses testified about their interaction with "the Defendant, Robert Cantrell," and many of those witnesses testified that he was present in court.

### Testimony of Margarita Olson:

Q: Now, was there anyone other than Greg Cvitkovich present in the office with him when you interviewed?
A: Yes.
Q: Who was that?
A: Bobby.
Q: Bobby who?
A: Cantrell.
Q: The [D]efendant, Mr. Cantrell?
A: Yes.

(Gov. Ex. 4, p. 4).

### Testimony of Joanne Filler:

Q: Now, do you know Robert Cantrell?
A: Yes.
Q: Okay. Do you see him here today?
A: Yes. Yes, I do.

(Gov. Ex. 5, p. 4).

### Testimony of Rose Plesha:

Q: Do you know the [D]efendant, Robert Cantrell?
A: Yes, I do.
Q: And during your employment with Addiction and Family Care, did you see Robert Cantrell at the offices of AFC?
A: Yes, I did.
Q: Approximately how often would you see him there?
A: It was, like two or three times a week.
                              ***
Q: Now, did you see the [D]efendant review the Cantrell cards as well?
A: Yes.
                              ***
Q: Now, do you recall having any conversations with the [D]efendant regarding how much he was being paid for bringing in business to AFC?
A: Yes, I do.

(Gov. Exs. 6(a), pp. 3-4; 6(b), p. 10; and 6©, p. 17).

### Testimony of Aravind Muzumdar:

Q: What did you do next?

A:  Well, then I approached Doctor Cantrell, you know, to see if he can assist me in justifying my invoice, and I finally got paid.
Q:  Okay. And is that Doctor Robert Cantrell?
A:  Yes.
Q:  And do you see him in the courtroom today?
A:  I do.

(Gov. Ex. 7, pp 5-6).

Testimony of Deborah Riga:

Q:  Do you know the [D]efendant, Robert Cantrell?
A:  Yes, I do.
        ***
Q:  And did you discuss your concerns with [D]efendant Cantrell?
A:  Definitely.
        ***
Q:  Ms. Riga, in the course of your holding the position of Schererville town court judge, did the [D]efendant ever make any requests of you or ask you of any favors?
A:  The only favors were regarding hiring people.
Q:  And what in that regard did the [D]efendant ask you?
A:  He asked at one point for his son - son-in-law, I'm sorry, Shawn, to be given a job. Shawn was in school at the time. So I was able to accommodate that, and I gave Shawn a job as bailiff in the court.
Q:  What's Shawn's last name?
A:  Valentine.
Q:  You said it's his son-in-law? Who is he married to?
A:  Julie Cantrell
Q:  Mr. Cantrell's daughter?
A:  Correct.
Q:  Anybody else that you employed at the request of the [D]efendant?
A:  Yes. One was Tom Philpot's mother-in-law, Mary Ann Cavarinas.
Q:  How did that come about?
A:  Bob had called me from a luncheon that he was having with Tom Philpot and Stig and asked me if I would meet Mary Ann, his mother-in-law. She was looking for a job. She wasn't happy where she was at.
        ***
Q:  Now, during the time that your were referring individuals in your capacity as Schererville town court judge, referring people to AFC, where was the [D]efendant employed, if you recall?

-5-

> A: Where was the [D]efendant employed? At the North Township Trustee's Office.
>
> ***
>
> Q: Okay, now did you ever have any conversation with the [D]efendant concerning his receipt of cash payments from AFC?
> A: Yes.
>
> ***
>
> Q: Did you have any conversations with the [D]efendant concerning that?
> A: Yes. . ..

(Gov. Ex. 8(a) p. 5; Ex. 8(b), p. 9; Ex. 8©, p. 16; Ex. 8(d), p. 17; Ex. 8(e), p. 19; Ex. 8(f), p. 24).

Testimony of Jose Valdez:

> Q: Do you know [D]efendant Robert Cantrell?
> A: Yes.
> Q: Is he in the courtroom today?
> A: Yes.

(Gov. Ex. 9, p. 3).

Testimony of Joanne Brezinski:

> Q: And do you know the [D]efendant, Robert Cantrell?
> A: Yes.

(Gov. Ex. 10, pp. 9-10).

Testimony of Jesse Villapondo:

> Q: I want to direct your mind and attention to the time period of February 2003. At that time did you ever have occasion to meet with [D]efendant Robert Cantrell?
> A: Yes.
> Q: And what were the circumstances in which you agreed to meet with Robert Cantrell?
> A: I was invited to a lunch meeting on February 13th, the day before Valentine's Day of that year, by Joe De La Cruz . . ..

(Gov. Ex. 11, p. 3).

Testimony of Linda Baldin:
> Q: And I believe you testified that you have met [D]efendant Robert Cantrell?

```
A:   Yes, I have.
Q:   Do you recognize him here in the courtroom today?
A:   Yes, I do.
```

(Gov. Ex. 12, p. 5).

In addition to these nine witnesses, Attorney John Cantrell, testified during the trial. John Cantrell was asked if he was "related to Defendant Robert Cantrell," to which he responded, "Robert is my dad." (Gov. Ex. 3, p. 4). John testified about his and his father's involvement in AFC as well as the health insurance John was provided through AFC. During John's testimony, he at times looked in the direction of his father, Robert Cantrell, sitting at the defense table with counsel. (Gov. Ex. 1(b), pp. 7-8).

Nancy Fromm, owner of AFC, took the witness stand and testified during trial. She testified about her friendship with Defendant Robert Cantrell as well as Robert Cantrell's involvement with AFC. This included testifying about the contract between the North Township Trustee's Office and AFC that was at issue in Counts One through Four of the indictment as well as the health insurance that was provided to Robert Cantrell's children through AFC that was at issue in Counts Five through Seven. During her testimony, Ms. Fromm at times looked in the direction of Robert Cantrell sitting at the defense table with counsel. (Ex. 1(c), pp. 7-8).

In addition to presenting testimonial evidence, the parties entered into the following stipulations that were read to the jury:

> One, between January 1st, 2000, and December 31st, 2005, Defendant Robert Cantrell did not file with the Indiana State Board of Accounts a disclosure of any financial interest he had with any contracts between Addiction and Family Care, Incorporated, and the North Township of Lake County Indiana.
>
> Two, between January 1st, 2000, and December 31st, 2005, Defendant Robert Cantrell did not file with the Clerk of the Superior Court of Lake County, Indiana, a disclosure of any financial interest he had with any contracts between Addiction and Family Care, Incorporated, and the North Township of Lake County Indiana.

(Gov. Ex. 13(a)&(b)).

After the above stipulations were read, the Court asked the parties if they agreed with the stipulations:

```
Q (the Court)    :   So stipulated, Defendant?
A (Mr. Milner)   :   So stipulated, your honor.
Q (the court)    :   So stipulated, Mr. Cantrell?
A (Mr. Cantrell) :   (Affirmative nod).
```

(Ex. 13©).


Rule 29 Motion for Judgment of Acquittal

Under Rule 29 of the Federal Rules of Criminal Procedure, a court may acquit a defendant "after the evidence on either side is closed if the evidence is insufficient to sustain a conviction. . .." In considering a motion for judgment of acquittal under Rule 29, the Court must view all evidence in the light most favorable to the Government. *United States v. Washington*, 184 F.3d 653, 657 (7th 1999). "The test that the court must use is whether at the

time of the motion there was relevant evidence from which the jury could reasonably find (the defendant) guilty beyond a reasonable doubt."  *United States v. Weed*, 689 F.2d 752, 756 (7th Cir. 1982)(citations and quotations omitted).

Defendant argues that he is entitled to judgment of acquittal because the Government never properly identified Robert Cantrell sitting at the defense table with counsel as the person who committed the charged crimes.  "Identification of the defendant as the person who committed the charged crime is always an essential element which the government must establish beyond a reasonable doubt."  *United States v. Alexander*, 48 F.3d 1477, 1490 (9th Cir. 1995)(citations omitted).  Generally, this is accomplished by an in-court identification of the accused.  *Weed*, 689 F.2d at 754-755.  However, the Government concedes that there was no formal in-court identification of Robert Cantrell as the person who committed the charged crimes.  (DE# 59, p. 1).

Nevertheless, absent a specific in-court identification, identification can "be inferred from all the facts and circumstances in evidence."  *Id.* (citations omitted).  Thus, "a witness need not physically point out a defendant so long as the evidence is sufficient to permit the inference that the person on trial was the person who committed the crime."  *Weed*, 689 F.2d at 755(citing *United States v. Darrell*, 629 F.2d 1089, 1091 (5th Cir. 1980)).

The Government points to several pieces of evidence it claims allowed the jury to infer that Robert Cantrell sitting at the defense table with counsel was the same person charged in the indictment. Each of these pieces of evidence will be addressed in turn.

### Testimony of Olsen, Filler, Plesha, Muzumdar, Riga, Valdez, Brezinski, Villapondo and Baldwin

First, the Government directs this Court's attention to the trial transcript of nine witnesses - Margarita Olson, Joanne Filler, Rose Plesha, Aravind Muzumdar, Deborah Riga, Jose Valdez, Joanne Brezinski, Jesse Villapando, and Linda Baldin- who testified about their interaction with "the Defendant, Robert Cantrell," and many of those witnesses testified that he was in court. The Government argues these excerpts that label Robert Cantrell as "the Defendant, Robert Cantrell" demonstrate that the jury could have logically inferred that the "Robert Cantrell" sitting at the defense table with counsel was the same "Robert Cantrell" charged in the indictment.

In *United States v. Alexander*, the Ninth Circuit noted witness testimony that the person in court was "the Defendant" can constitute identification evidence. 48 F.3d at 1490-91. In that case, defendant Alexander was charged along with his co-defendants with bank robbery. During the trial, Alexander was never directly identified by any witness as the person who committed the bank

robbery.  However, during the trial an officer - who had followed the perpetrators from the site of the robbery and was present when the defendants were arrested - responded affirmatively when asked whether the man arrested was "Defendant Alexander."  In addition, another officer testified that he saw Alexander at the arrest scene and after Alexander's incarceration, and noted that he interviewed Alexander.  During the officers' testimony, neither of them suggested that the Gary Alexander on trial was not the same Gary Alexander who robbed the bank.  In fact, one officer testified that the man she arrested for bank robbery was "the Defendant Gary Alexander."  *Id.*

The type of identification evidence in *Alexander* was meaningful because it came from witnesses who had personal knowledge about the crime and the person who committed acts constituting the crime.  When a witness with this kind of knowledge labels the person in court as "the defendant," a jury could reasonably infer that the person on trial was the same person charged in the indictment.  *Alexander*, 48 F.3d at 1490.  In a similar regard, the failure of a witness - who had personal knowledge about the crime and the person who committed the acts constituting the crime - to note that the defendant in court was not the same person who committed the crime can also constitute identification evidence.  See e.g., *Weed*, 689 F.2d at 755(noting that testifying agents with personal knowledge of the crime and

-11-

John Weed's statements did not testify that the defendant was not the same John Weed who committed the crime). In either scenario, this sort of identification evidence is probative when it comes from a witness who has personal knowledge of the crime and the person who committed acts constituting that crime.

Here, though, the Government fails to explain whether any of these nine witnesses had personal knowledge of the alleged crimes or about the person who committed the acts constituting those crimes. The Government cites to only portions of the transcripts that show the witnesses know who Robert Cantrell is and that he is labeled as a defendant in this case. Such testimony is far different from that in *Alexander* where the witness had personal knowledge that the person in court was the same person who committed the crime. Because none of the nine witnesses are shown to have any personal knowledge of the crimes charged or the person who committed those charged offenses, their identifying Robert Cantrell as "Defendant Cantrell" does not provide any evidence as to whether the Robert Cantrell in the courtroom was the same Robert Cantrell charged in the indictment.

While the cited testimony itself may fail to establish relevant identity evidence, defense counsel's failure to object to the numerous references to his client as "the Defendant" does so. Allowing Robert Cantrell to be referred to as "the Defendant" throughout the trial without objecting is relevant evidence that

could allow a jury to reasonably infer that Robert Cantrell sitting at the defense table with counsel is the same person charged in the indictment. *Weed*, 689 F.2d at 756(considering defense counsel's failure to object to references to "the defendant" as probative and a waiver to object to that testimony); *Green*, 757 F.2d 119(noting that defense counsel's failure to object to reference to "defendant" throughout case was material, especially when there is only one defendant in the case).

### Witnesses Nancy Fromm and John Cantrell

The jury saw and heard both John Cantrell and Nancy Fromm testify. Nancy Fromm, owner of AFC, testified about her friendship with Robert Cantrell. She also testified about Robert Cantrell's involvement with AFC, which included procuring a contract with the North Township Trustee's Office and procuring health insurance for his children. During her testimony, Nancy Fromm at times looked in the direction of Robert Cantrell.

John Cantrell, Robert Cantrell's son, testified about his familial relationship with Robert Cantrell and also about the health insurance that was procured for him through AFC. Like Nancy Fromm, John Cantrell at times looked in the direction of Robert Cantrell while testifying.

Similar to the witnesses in *Alexander* who had personal knowledge of the crime and the person who committed the crime,

Nancy Fromm had personal knowledge of Robert Cantrell's role in procuring the North Township Contract and in getting health insurance for his adult children through AFC. John Cantrell had personal knowledge of the procurement of his health insurance from AFC. The fact that neither Nancy Fromm nor John Cantrell testified that Robert Cantrell sitting at defense table with counsel was not the same person charged with illegally procuring the North Township Contract or fraudulently procuring health insurance would allow a jury to infer that the Robert Cantrell in the courtroom was the same Robert Cantrell who committed the crimes charged. *Weed,* 689 F.2d at 755-56 ("failure of any of the witnesses to point out that the wrong man had been brought to trial [can be] eloquent and sufficient proof of identity.")(discussing *United States v. Fenster*, 449 F.Supp. 435 (E.D. Mich. 1978); *Alexander*, 48 F.3d at 1490-91. This is only highlighted by the fact that John Cantrell and Nancy Fromm at times looked in the Robert Cantrell's direction while testifying.

### Stipulations

Finally, to put any doubt regarding identity to rest, Robert Cantrell stipulated that the "Defendant, Robert Cantrell" did not file certain financial disclosures. After the filing of the stipulations, the Court asked whether he agreed with the stipulation, to which he acknowledged that he did. This gave the

jury a basis to conclude Robert Cantrell sitting at the defense table with counsel was the same Robert Cantrell charged in the indictment. *Green*, 757 F.2d at 119(finding that admitted stipulations signed by "defendant, Wiley F. Green" relevant identification evidence).

The Government has pointed to numerous pieces of evidence regarding the identity in this case: (1)the defense counsel's failure to object to the repeated references to his client as "the defendant"; (2) the failure of either John Cantrell or Nancy Fromm to assert that the Robert Cantrell on trial was not the same Robert Cantrell who committed the acts charged in the indictment; (3) the fact that both John Cantrell and Nancy Fromm at times looked at Robert Cantrell while testifying; (4) the stipulations entered on the record; and (5) Robert Cantrell's in-court acknowledgment of those stipulations. This evidence, viewed in the light most favorable to the Government, allowed a reasonable jury to find that Robert Cantrell sitting at the defense table with counsel was the same Robert Cantrell charged in the indictment.[2]

Rule 33 Motion for New Trial

Under Rule 33 of the Federal Rules of Criminal Procedure, the

---

[2] In addition, it can not go unnoticed that Robert Cantrell was identified by his attorney in opening statement, Gov. Ex. 2, which itself is a basis for the jury to find that Robert Cantrell committed the acts charged. *United States v. Hyles*, 521 F.3d 946, 955 (8th Cir. 2008).

court may grant a new trial "if the interest of justice so requires." A new trial is in the interest of justice where "the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989).

A movant under Rule 33 bears the responsibility of developing his arguments and presenting the court with adequate grounds and authority to grant the relief requested. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). Failure to do so results in waiver of those undeveloped and unsupported arguments. *Id.* Defendant's four-paragraph Rule 33 motion, which does not contain a single legal citation, fails to meet his responsibility of developing arguments and presenting grounds to grant the relief requested. The motion is denied on that basis. Nevertheless, this Court has reviewed the Government's thorough response and finds that Defendant's motion for a new trial would fail on the merits in any event.

CONCLUSION

For the reasons set forth above, Defendant's motions are **DENIED**.

DATED: November 20, 2008  /s/RUDY LOZANO, Judge
  **United States District Court**